## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

ROCKY MOUNTAIN GUN OWNERS, a Colorado non-profit corporation,

and

COLORADO CAMPAIGN FOR LIFE, a Colorado non-profit corporation,

      Plaintiffs,

v.

SCOTT GESSLER, in his official capacity as Secretary of State for the State of Colorado

   and

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, a Delaware non-profit corporation, t/a COLORADO ETHICS WATCH,

      Defendants.

---

### VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

      Plaintiffs, Rocky Mountain Gun Owners and Colorado Campaign for Life, for their complaint against Defendants, Scott Gessler, in his official capacity as Secretary of State of the State of Colorado, and Citizens for Responsibility and Ethics in Washington t/a Colorado Ethics Watch, allege as follows:

### INTRODUCTION

      1.      "Discussion of issues cannot be suppressed simply because the issues may also be pertinent in an election. Where the First Amendment is implicated, the tie goes to the speaker,

not the censor." *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 474 (2007). "Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period." *Thornhill v. Alabama*, 310 U.S. 88, 102 (1940).

2.      Plaintiffs, Rocky Mountain Gun Owners ("RMGO"), and Colorado Campaign for Life ("CCFL"), file this suit to challenge the constitutionality of Colorado's burdens on political speech protected by the First Amendment.  The definition of an "electioneering communication" under Colo. Const. art. XXVIII, § 2(7) attempts to regulate a nearly limitless array of protected First Amendment political and non-political speech in contravention of the constitutional mandate that such speech may only be regulated in narrowly drawn circumstances and with narrow specificity.

3.      The definition of an "electioneering communication" under Colorado law is severely overbroad, encompassing a wide variety of both pre-election political speech and pre-election non-political speech, and subjecting the speaker to PAC-like requirements.  Colorado's regulation of pre-election speech under the guise that it is an "electioneering communication" is so broad that it is patently unconstitutional.

4.      RMGO and CCFL ask this Court to declare Colorado's definition of an "electioneering communication" to be unconstitutional on its face and permanently enjoin the Defendants from enforcing any provision of Colorado law that relies upon this definition under Colo. Const. art. XXVIII, § 2(7), including, but not limited to Colo. Rev. Stat. Ann. § 1-45-101 (2014), *et seq*., and Colo. Const. art. XXVIII. § 9(2)(a).

5.      At a minimum, this Court should declare Colorado's definition of an "electioneering communication" to be unconstitutional as applied to the Plaintiffs and permanently enjoin the Defendants from enforcing any provision of Colorado law that relies upon this definition under Colo. Const. art. XXVIII, § 2(7), including, but not limited to Colo. Rev. Stat. Ann. §  1-45-101 (2014), *et seq*., and Colo. Const. art. XXVIII, § 9(2)(a), against the Plaintiffs.

6.      RMGO and CCFL also request injunctive relief to prevent the Defendants from enforcing Colorado's unconstitutional reporting and disclosure requirements against them in an action pending as Case Number OS 2014-0025 before the Secretary of State of the State of Colorado.

7.      Finally, RMGO and CCFL ask this Court to declare the private enforcement action scheme set forth in Colo. Const. art. XXVIII § 9(2)(a) to be unconstitutional as it has a chilling effect on First Amendment freedoms and acts as a prior restraint on political speech.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction because this action arises under the First and Fourteenth Amendments to the United States Constitution. *See* 28 U.S.C. § 1331.

9.      This Court also has jurisdiction because this action arises under Section 1 of the Civil Rights Act of 1871.  *See* 42 U.S.C. § 1983; *see also* 28 U.S.C. § 1343(a).

10.     This Court may grant relief under the Declaratory Judgment Act.  *See* 28 U.S.C. §§ 2201 and 2202.

11.     Venue is proper in this Court because Defendant Gessler, in his official capacity, resides in the District of Colorado. *See* 28 U.S.C. § 1391(b)(1). Venue is also proper in this

Court, because Plaintiffs RMGO and CCFL, both corporations organized under the laws of Colorado, as well as Defendant Colorado Ethics Watch ("CEW"), have their principal places of business in the District of Colorado, thus a substantial part of the events or omissions giving rise to these claims occurred in the District of Colorado. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

### A.  Rocky Mountain Gun Owners

12.     RMGO is a Colorado non-profit corporation exempt from income taxes under § 501(c)4 of the Internal Revenue Code.  As a 501(c)4 organization RMGO is not obligated to disclose the identities of its members, donors, and supporters.  It is Colorado's largest state-based Second Amendment grassroots lobbying organization.

13.     RMGO's mission is to defend Coloradans' Second Amendment "right to keep and bear arms from all its enemies, and advance those God-given rights by educating the people of Colorado and urging them to take action in the public policy process."  *See* Rocky Mountain Gun Owners Learn More About RMGO, http://www.rmgo.org/about/request-info/learn-more (last visited Oct. 15, 2014).

14.     In pursuit of its mission, RMGO engages in political speech such as informing the people of Colorado on the Second Amendment public policy positions of political candidates. The core of its mission is Second Amendment issue discussion.

### B.  Colorado Campaign for Life

15.     CCFL is a Colorado non-profit corporation exempt from income taxes under § 501(c)4 of the Internal Revenue Code.  As a 501(c)4 organization CCFL is not obligated to

disclose the identities of its members, donors, and supporters. It is a Colorado based and focused grassroots pro-life lobbying organization.

16. CCFL's mission is to promote the passing of pro-life legislation like the Life at Conception Act and to lobby political candidates to support such public policy positions. *See* Colorado Campaign for Life About CCFL, http://www.coloradocampaignforlife.org/about-ccfl (last visited Oct. 15, 2014).

17. In pursuit of its mission, CCFL engages in political speech such as informing the people of Colorado on the pro-life public policy positions of political candidates. The core of its mission is pro-life issue discussion.

## C. Defendants

18. Defendant Scott Gessler is sued in his capacity as Secretary of State of the State of Colorado. Secretary Gessler is the primary public officer responsible for enforcing the campaign finance laws of the State and for promulgating the necessary rules to administer and enforce these laws. *See* Colo. Const. art. XXVIII, § 9(1). Secretary Gessler directs and manages the Office of the Secretary of State for the State of Colorado. Upon information and belief, Secretary Gessler is a resident of Denver, Colorado.

19. Secretary Gessler is additionally required to refer private enforcement actions under Colo. Rev. Stat. Ann. §§ 1-45-108, 1-45-114, 1-45-115, and 1-45-117 to an administrative law judge for adjudication on their merits. *See* Colo. Const. art. XXVIII, § 9(2)(a).

20. Defendant Citizens for Responsibility and Ethics in Washington ("CREW") is an IRS 501(c)(3) organization. CREW is registered to operate as a foreign corporation with the Colorado Secretary of State under the trade name Colorado Ethics Watch ("CEW"). CEW does

not appear to be separately incorporated in Colorado.  CREW is a Delaware non-profit corporation.

## STATUTORY AND REGULATORY BACKGROUND

21.     Article XXVIII of the Colorado State Constitution and the Fair Campaign Practices Act ("FCPA"), Colo. Rev. Stat Ann. §  1-45-101, *et seq.*, act as Colorado's primary campaign finance laws and impose various reporting and disclosure requirements on speakers engaged in an "electioneering communication."

22.     The FCPA, in Colo. Rev. Stat. § 1-45-103(9), adopts the definition of "electioneering communication" used in Colo. Const. art. XXVIII, § 2(7).  Under Article XXVIII and the FCPA, an "electioneering communication" is defined as:

> [A]ny communication broadcasted by television or radio, printed in a newspaper or on a billboard, directly mailed or delivered by hand to personal residences or otherwise distributed that:
>
> (I) Unambiguously refers to any candidate; and
>
> (II) Is broadcasted, printed, mailed, delivered, or distributed within thirty days before a primary election or sixty days before a general election; and
>
> (III) Is broadcasted to, printed in a newspaper, distributed to, mailed to, delivered by hand to, or otherwise distributed to an audience that includes members of the electorate for such public office.

Colo. Const. art. XXVIII, § 2(7); *see also* Colo. Rev. Stat. Ann. §  1-45-103(9) (2014).

23.     Section 6 of Article XXVIII provides that any person expending more than $1000 per calendar year on electioneering communications must submit reports to the Secretary of State, which include spending on electioneering communications and the name, address, occupation, and employer of any person that contributed more than $250 to fund the electioneering communication.  Colo. Const. art. XXVIII, § 6(1).

24.     Section 1-45-108 of the Colorado Revised Statutes governs the timing and contents of the reports and disclosures required under Colo. Const. art. XXVIII, § 6(1).  Colo. Rev. Stat. Ann. §  1-45-108 (2014).

25.     Article XXVIII and the FCPA exclude from the definition of "electioneering communication" the following:

> (I) Any news articles, editorial endorsements, opinion or commentary writings, or letters to the editor printed in a newspaper, magazine or other periodical not owned or controlled by a candidate or political party;

> (II) Any editorial endorsements or opinions aired by a broadcast facility not owned or controlled by a candidate or political party;

> (III) Any communication by persons made in the regular course and scope of their business or any communication made by a membership organization solely to members of such organization and their families;

> (IV) Any communication that refers to any candidate only as part of the popular name of a bill or statute.

Colo. Const. art. XXVIII, § 2(7); *see also* Colo. Rev. Stat. Ann. §  1-45-103(9) (2014).

26.     The Secretary of State is responsible for enforcing and promulgating rules in furtherance of these campaign finance provisions.  *See* Colo. Const. art. XXVIII, § 9.  Among other penalties, persons in violation of these provisions "shall be subject to a civil penalty of at least double and up to five times the amount contributed, received, or spent in violation of the applicable provision."  Colo. Const. art. XXVIII, § 10(1).  A failure to file the appropriate statement or other information required under Article XXVIII and the FCPA also subjects a person to a fine of $50 per day.  Colo. Const. art. XXVIII, § 10(2).

27.     Colorado's statutory scheme also permits any person to pursue a private action to enforce the campaign finance provisions.  *See* Colo. Const. art. XXVIII, § 9(2)(a).  Under this

section, any person may file a written complaint with the Secretary of State alleging a violation of, among other provisions, Colo. Rev. Stat. Ann. §  1-45-108(2) and Colo. Const. art. XXVIII, § 6(1), which govern the timing and contents of the reports required after electioneering communications are made.  *See* Colo. Const. art. XXVIII, § 9(2)(a).

28.     After a private enforcement action is filed with the Secretary of State, he is required to refer the complaint to an administrative law judge within three days after the filing of the complaint.  *See* Colo. Const. art. XXVIII, § 9(2)(a).  The administrative law judge must hold a hearing within fifteen days of receiving the complaint and must render a decision within fifteen days of the hearing.  *See id*.  Such decisions are reviewable by Colorado's Court of Appeals.  *See id*.

29.     The final decision in this private enforcement action may be enforced by the Secretary of State by the filing of an enforcement action.  *See* Colo. Const. art. XXVIII, § 9(2)(a).  If the Secretary of State fails to file an enforcement action within thirty days of the decision, the person filing the complaint may file a private action to enforce the decision.  *See id*.

## FACTUAL BACKGROUND

30.     In mid-June 2014, CCFL sent mailers to Republican primary voters in Colorado Senate Districts 19 and 22.  A copy of the Senate District 19 mailer is attached as Exhibit A and a copy of the Senate District 22 mailer is attached as Exhibit B.

31.     The text of CCFL's mailers unambiguously refers to candidates for office in Colorado.  *See* Exh. A and Exh. B.  CCFL spent more than $1,000 on the mailers attached as Exh. A and Exh. B.

32.     In early June 2014, RMGO sent a backdated mass mailing to Republican primary voters in Colorado Senate Districts 19 and 22.   A copy of one version of this letter is attached as Exhibit C.

33.     The text of RMGO's mass mailing unambiguously refers to candidates for office in Colorado.  *See* Exh. C.  RMGO spent more than $1,000 on the mass mailing attached as Exhibit C.

34.     The mailers attached as Exhibits A and B, as well as the mass mailing attached as Exhibit C, were mailed or delivered to voters within Colorado Senate Districts 19 and 22 within thirty days of the June 24, 2014 primary election.

35.     Neither CCFL nor RMGO has filed a report to the Secretary of State of the State of Colorado pursuant to Colo. Const. art. XXVIII, § 6(1) or Colo. Rev. Stat. Ann. § 1-45-108 (1)(a)(III) that includes spending on such communications, and the name, and address, of any person that contributes more than two hundred and fifty dollars per year, and the occupation and employer of each such natural person.

36.     CCFL and RMGO intend to continue to distribute similar issue-based communications in the future to inform their constituencies of the positions of potential candidates on issues surrounding the Second Amendment (RMGO) and/or abortion (CCFL). Neither the previous mailings, attached as Exhibits A, B, and C, nor future communications, have expressly or impliedly advocated for the election or defeat of any candidate for office.

## PROCEDURAL BACKGROUND

37.     On September 9, 2014, CEW filed a private enforcement action against RMGO and CCFL pursuant to Colo. Const. art. XXVIII, § 9(2)(a).

38.     In the complaint CEW filed with the Secretary of State, CEW alleged that RMGO and CCFL's mailing of Exhibits A, B, and C, respectively, fell within the definition of an "electioneering communication" under Colo. Const. art. XXVIII, § 2(7)(a).  See CEW's Compl. attached hereto as Exhibit D .[1]

39.     CEW further alleged that RMGO and CCFL failed to file the appropriate reports and disclosure of contributors after mailing "electioneering communications."  CEW requested that RMGO and CCFL be each fined $50 per day for each day they have failed to file reports to the Secretary of State of the State of Colorado pursuant to Colo. Const. art. XXVIII, § 6(1) or Colo. Rev. Stat. Ann. § 1-45-108 (1)(a)(III).

40.     These reports that CEW demands to be filed under the regulatory scheme require the disclosure of the names of members, supporters, and donors who have contributed to the expense of producing the mailings at issue.  Colo. Rev. Stat. Ann. § 1-45-108 (1)(a)(III) (2014). Specifically, RMGO and CCFL would be required to report the amount expended on the communications at issue.  *Id.*  RMGO and CCFL would also, more importantly, be required to disclose the name and address of any person that contributes more than $250 per year to their organization.  *Id.*  RMGO and CCFL would also be required to provide the occupation and employer of each member, supporter, and donor that contributes more than two hundred fifty dollars.

41.     Following receipt of this private enforcement action, Defendant Gessler, through his authorized agents, servants, or employees, referred the action to an administrative law judge

[1] The attachments to CEW's Complaint have been separately attached to this Complaint.  Exhibit 1 to CEW's Complaint is attached hereto as Exhibit A.  Exhibit 2 to CEW's Complaint is attached hereto as Exhibit B.  Exhibit 3 to CEW's Complaint is attached hereto as Exhibit C.

for adjudication.  This matter has been assigned Case No. OS 20140025 in the Colorado Office

of Administrative Courts.

42.     A hearing on the merits of this private enforcement action has been scheduled to

be held on November 6, 2014, at 9:00 a.m., before the Office of Administrative Courts.  The

address for this hearing location is 1525 Sherman St., Denver, CO 80203.  *See*, Notice of

Hearing, attached as Exhibit E.

43.     This hearing on November 6, 2014 has been noticed and prosecuted by CEW,

which is a private person, and not by the government of the State of Colorado, alleging violations

of Colorado law.

44.     The Notice of Hearing (Exh. E) reveals that this hearing will be a full adversary

proceeding, much akin to a bench trial, as it states that:

> At the hearing, each party will have the right to present personal testimony and the
> testimony of other witnesses, present documentary evidence, cross-examine witnesses
> and present argument to the Administrative Law Judge.
>
> You may require the attendance of witnesses by subpoena, and subpoena forms may be
> obtained from the Office of Administrative Courts.  A party wishing to subpoena a
> witness shall be responsible for arranging for the service of the subpoena as required by
> law.
>
> A party may be represented by an attorney at the party's expense.  A party cannot be
> represented at a hearing by a person who is not an attorney.

45.     In addition to the power vested in a private citizen to assume the government's

role in prosecuting perceived violations of campaign finance law, the statutory scheme falling

under Colo. Const. art. XXVIII, § 9(2)(a) permits pre-trial discovery like in a civil action.  CEW

has previously noticed C.R.C.P. 30(b)(6) depositions and C.R.C.P. 34(a)(1) document requests

upon RMGO and CCFL.  *See*, Notices of Deposition, attached as Exhibits F and G.

46.     RMGO and CCFL are subject to great economic harm as a result of their defense of this private enforcement action.  Aside from the imposition of attorneys' fees and the inconvenience of pre-trial discovery and the need to prepare for trial during the weeks leading up to the general election in November, 2014, each organization is subject to extensive fines if found guilty of violating Colorado disclosure and reporting law for electioneering communications.  Even before a hearing has been held, CEW is demanding that RMGO and CCFL file the disclosure responses.  A copy of CEW's demand is attached as Exhibit H**.**

47.     Furthermore, the requirement compelling issue advocacy organizations to file PAC like disclosures, identifying donors, members, and supporters who contribute to the production of mailers, has a chilling effect on RMGO's and CCFL's First Amendment rights.

48.     Colorado's private enforcement of campaign finance laws scheme allows groups like CEW to act as censors of political speech.

## CLAIMS FOR RELIEF

49.     Freedom of speech is the norm, not the exception.  *See Citizens United v. FEC*, 558 U.S. 310, 361 (2010) ("more speech, not less, is the governing rule"); *see also Buckley v. Valeo*, 424 U.S. 1, 14-15 (1976).  "The right of citizens to inquire, to hear, to speak, and to use information to reach consensus is a precondition to enlightened self-government and a necessary means to protect it."  *Citizens United*, 558 U.S. at 339.

50.     The framers established government with the consent of the governed, and government has only those powers that the governed surrendered to it in the first place.  *See* U.S. Const. preamble (1787) ("We the people of the United States"); *see also* Colo. Const. preamble ("We, the people of Colorado, with profound reverence for the Supreme Ruler of the Universe")

51.     This power – including the constitutional power of Congress to regulate federal

elections, and each state's parallel power over its own, though not other states', elections, is

further constrained by other law, including the First Amendment.  *See Buckley*, 424 U.S. at 13

n.16, *see also North Carolina Right to Life, Inc. v. Leake*, 525 F.3d 274, 281 (4th Cir. 2008)

(citing *Buckley*, 424 U.S. at 13).

52.     All law regulating political speech must comply with the First Amendment, which

provides that Congress shall make no law respecting an establishment of religion, or prohibiting

the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the

people peaceably to assemble, and to petition the Government for a redress of grievances.

*See* U.S. Const., amend. I (1791).

53.     The First Amendment guards against overbreadth, and applies to the states

through the Fourteenth Amendment, regardless of whether it is through the Due Process Clause

or the Privileges and Immunities Clause.  *See Buckley*, 424 U.S. at 80; *see also Gitlow v. New

York*, 268 U.S. 652, 666 (1925) (freedom of speech and freedom of the press); *see also

McDonald v. City of Chicago*, 561 U.S. 742, __, 130 S.Ct. 3020, 3059, 3062-63 (2010) (Thomas,

J., concurring in part and concurring in the judgment).

54.     The government's power to regulate elections is an exception to the norm of

freedom of speech.  *See Citizens Against Rent Control v. City of Berkeley*, 454 U.S. 290, 296-97

(1981).  The power to regulate elections is also self-limiting.  To ensure that regulations are not

"impermissibly broad," *Buckley* establishes that government may, subject to further inquiry, have

the power to regulate donations received and spending for political speech only when they are

"unambiguously related to the campaign of a particular ... candidate" in the jurisdiction in

13

question, or "unambiguously campaign related" for short. *Buckley*, 424 U.S. at 80-81. This

principle helps ensure that government regulates only speech that it has the "power to regulate,"

*i.e.*, speech that government has a constitutional interest in regulating. *Leake*, 525 F.3d at 281-82

(citing *Buckley*, 424 U.S. at 80). This principle is part of the larger principle that law regulating

political speech must not be unconstitutionally overbroad. *See Buckley*, 424 U.S. at 80

(construing statute so that its reach no impermissibly broad).

55.     It is axiomatic that "[t]he government's authority to regulate in this area extends

only to money raised and spent for speech that is clearly *election related*; ordinary political

speech about issues, policy, and public officials must remain unencumbered." *Wisconsin Right*

*to Life v. Barland*, 751 F.3d 804, 810-11 (7th Cir. 2014) (citing *Buckley*, 424 U.S. at 42-44, 78-

80).

56.     "[B]ecause political speech is at the core of the First Amendment right,

overbreadth and vagueness concerns loom large in this area, especially when the regulatory

scheme reaches beyond candidates, their campaign committees, and political parties. To protect

against an unconstitutional chill on issue advocacy by independent speakers, *Buckley* held that

campaign-finance regulation must be precise, clear, and may only extend to speech that is

'unambiguously related to the campaign of a particular federal candidate.'" *Id*. at 811 (citing

*Buckley*, 424 U.S. at 80). Further, "[b]ecause First Amendment freedoms need breathing space

to survive, government may regulate in [this] area only with narrow specificity." *Buckley*, 424

U.S. at 41 n. 48 (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)).

57.     Most succinctly stated, "the First Amendment forbids the government from regulating political expression that does not 'in express terms advocate the election or defeat of a clearly identified candidate.'"  *Barland*, 751 F.3d at 811 (quoting *Buckley*, 424 U.S. at 44).

## FIRST CLAIM FOR RELIEF
### (Colorado's Definition of "Electioneering Communication" Violates the First and Fourteenth Amendments to the United States Constitution)

58.     Plaintiffs re-allege the allegations set forth in paragraphs 1 through 57 as through fully set forth herein.

59.     On its face, Colorado's definition of an "electioneering communication" is so overbroad that it punishes a substantial amount of protected free speech when judged in relation to the statute's plainly legitimate sweep.  *See Barland*, 751 F.3d at 836.

60.     As a result of this definition being facially overbroad, Colorado's definition of "electioneering communication," and the statutory burdens placed upon protected speech under Article XXVIII, §§ 6 and 9, of the Colorado State Constitution, in conjunction with the Fair Campaign Practices Act ("FCPA"), C.R.S. 1-45-101, *et seq.*, violate the First Amendment to the United States Constitution (as incorporated to apply to the States under the Fourteenth Amendment).

61.     Under Colorado's definition of "electioneering communication," **any communication** that is [otherwise] distributed in any manner **to an audience that includes members of the electorate** is categorized as an electioneering communication if it is distributed **within 30 days before a primary election or 60 days before a general election** and if it unambiguously **refers to any candidate**.  *See* Colo. Const. art. XXVIII, § 2(7); *see also* C.R.S. 1-45-103(9) (emphasis added).

62.     This definition is different from the definition of an "electioneering communication" in other states in that it regulates all communications without regard to the content of the message regarding a candidate.  *See*, e.g., Wis. Admin. Code GAB § 1.28(3)(b) (requiring content to refer to personal qualities, character, or fitness of candidate; support or condemn candidate's position on issues; or support or condemn candidate's public record in order to define as electioneering communication).  Under Colorado law, the mere mentioning of a candidate's name sweeps the speaker into the regulatory scheme.

63.     As a result of Colorado's failure to include similar language to narrow its definition of an "electioneering communication," protected language that in no way expressly advocates for the election or defeat of a clearly identified candidate now subjects a speaker in Colorado to PAC-like regulations.  Regulation of speech that is not express advocacy as a result of a statute's overbreadth violates the First and Fourteenth Amendments.

64.     Colorado's reporting and disclosure requirements impose a significant burden upon the exercise of RMGO and CCFL's right to engage in issue advocacy that does not expressly advocate for the election or defeat of any candidate.  Among other requirements, RMGO and CCFL will be required to prepare and file multiple reports disclosing amounts spent and disclose the identity and employer of any person that contributed more than $250 to fund their issue-based communications.  *See* Colo. Const. art. XXVIII, § 6(1); *see also* C.R.S. § 1-45-108(1)(a)(III).  Compliance with these requirements is costly and burdensome, and their enforcement is likely to chill the speech of RMGO, CCFL, and the individuals who wish to support these organizations' speech through monetary contributions.  Failure to report and

disclose like a PAC exposes RMGO and CCFL to civil and criminal penalties, as well as private enforcement actions. These constitutional harms are irreparable.

65.     The United States Court of Appeals for the Seventh Circuit recently examined a similar, although less broad, statute under Wisconsin law. *See Barland*, 751 F.3d at 837. While Wisconsin's statute regulated only speech that made a statement about a candidate's qualities as a politician, *supra*, Colorado regulates all speech in a designated time period that refers to any candidate. *See id*. at 837. The Seventh Circuit ruled that, in relevant part, Wisconsin's statutory language was unconstitutionally overbroad. *See id*. at 838.

66.     Accordingly, Colorado's more overbroad definition of "electioneering communication" (C.R.S. 1-45-103(9) and Colo. Const. art. XXVIII, § 2(7)), and the statutory burdens placed upon protected speech under Article XXVIII, §§ 6 and 9, of the Colorado State Constitution, in conjunction with the Fair Campaign Practices Act ("FCPA"), Colo. Rev. Stat. § 1-45-101, *et seq.*, violate the First and Fourteenth Amendments to the United States Constitution.

67.     The specific provisions of Colorado's reporting and disclosure requirements that are unconstitutionally overbroad cannot be severed from the remainder of the reporting and disclosure framework because they are integral to the operation of that scheme. The entire reporting and disclosure framework therefore must be declared invalid on its face.

68.     At a minimum, Colorado's reporting and disclosure requirements cannot be applied to RMGO and CCFL because it is unconstitutional to subject RMGO and CCFL to overbroad regulations on issue-related speech that does not expressly advocate for the election or defeat of a candidate. Thus, Colorado's overbroad definition of "electioneering communication"

(C.R.S. 1-45-103(9) and Colo. Const. art. XXVIII, § 2(7)), and the statutory burdens placed upon protected speech under Article XXVIII, §§ 6 and 9, of the Colorado State Constitution, in conjunction with the Fair Campaign Practices Act ("FCPA"), C.R.S. 1-45-101, *et seq.*, violate the First and Fourteenth Amendments to the United States Constitution as applied to RMGO and CCFL.

**SECOND CLAIM FOR RELIEF**
**(Colorado's Threshold for Spending that Triggers Reporting is Too Low and Violates the First and Fourteenth Amendments to the United States Constitution)**

69. Plaintiffs re-allege all of the allegations set forth in paragraphs 1 through 68 as though fully set forth herein.

70. Section 6 of Article XXVIII of the Colorado Constitution provides that any "person who expends one thousand dollars or more per calendar year on electioneering communications shall submit reports to the secretary of state in accordance with the schedule currently set forth in 1-45-108(2), C.R.S., or any successor section. Such reports shall include spending on such electioneering communications, and the name, and address, of any person that contributes more than two hundred and fifty dollars per year to such person described in this section for an electioneering communication." Colo. Const. art. XXVIII, § 6.

71. Under the "exacting scrutiny" standard that applies to these types of mandatory disclosures under the First Amendment, there is no substantial relation to a sufficiently important government interest to justify the burdens imposed by Colo. Const. art. XXVIII, § 6 with a statutory $1,000 expenditure threshold. *See Coalition for Secular Government v. Gessler*, Civil Action No. 1:12-cv-01708-JLK-KLM, Dkt. 49 at 12-14 (D. Colo. Oct. 10, 2014).

72.     Accordingly, as the statutory $1,000 expenditure threshold is too low to constitutionally trigger reporting and disclosure requirements under the First and Fourteenth Amendments to the United States Constitution, Colo. Const. art. XXVIII, § 6's reporting threshold is unconstitutional on its face.

73.     At a minimum, Colorado's reporting and disclosure requirements cannot be applied to RMGO and CCFL because it is unconstitutional to subject RMGO and CCFL to a threshold of $1,000 to trigger reporting and disclosure requirements under the First and Fourteenth Amendments to the United States Constitution.

<div align="center">

**THIRD CLAIM FOR RELIEF**
**(Colorado's Scheme for the Private Enforcement of Alleged Violations of Campaign Finance Laws is Overly Broad and Has a Chilling Effect on First Amendment Freedoms)**

</div>

74.     Plaintiffs re-allege all of the allegations set forth in paragraphs 1 through 73 as though fully set forth herein.

75.     Section 9(2)(a) of Article XXVIII of the Colorado Constitution allows private parties to file complaints seeking to enforce Colorado's campaign finance laws with the Colorado Secretary of State.

76.     This statutory scheme requires the Secretary of State to refer the complaint to an administrative law judge within three days of receiving the complaint. Colo. Const. art. XXVII, § 9(2)(a). The administrative law judge must hold a hearing within fifteen days of receipt of the complaint and must render a decision within fifteen days of the hearing. *See id.* Neither the Secretary of State, nor the administrative law judge, have discretion to dismiss a complaint without a hearing. *See id.* ("the secretary of state shall refer the complaint to an administrative law judge . . . [t]he administrative law judge shall hold a hearing"). The hearing contemplated

under this statutory scheme is much akin to a bench trial with respect to financial and time burdens placed upon litigants.  See Exh. E.

77.     This statutory scheme even allows the private party to file an action to enforce the administrative law judge's decision if the Secretary fails to file its own enforcement action. Colo. Const. art. XXVII, § 9(2)(a).  This scheme puts the enormous power and responsibility of our government in the hands of a private complainant.  Even before a hearing has been held, CEW is demanding that RMGO and CCFL file the disclosure responses.  *See* Exh. H.

78.     A party like CEW can simply file complaint, regardless of merit, and force groups like RMGO or CCFL into this regulatory scheme.  When these complaints are filed during election season, they have an especially chilling effect on the First Amendment freedoms of groups like RMGO and CCFL, as these groups are forced to expend resources and energy on defending against the claims in the proceeding before the administrative law judge rather than on pursuing their mission and speaking out on their issues.

79.     This law allows actions that can be most bluntly described as "political shenanigans."  A complainant who does not like the speech of a particular individual or group can simply file a complaint and tie the speaker up in an action before the Colorado Secretary of State.  The mere filing of such a complaint during election season can force smaller groups like CCFL to focus all of their efforts and resources on responding to the action before the Secretary of State rather than on speaking about pro-life issues.  The net effect of this statutory scheme is that it allows private actors such as CEW to essentially act as censors of the public discourse.

80.     Neither the law, nor any private actor using the law, should be allowed to suppress issue discussion simply because that issue may be pertinent in an election or because

the issue discussion speech occurred during an election period.  *See Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 474(2007).  Subjecting issue advocacy groups engaged in non-express advocacy issue discussion to PAC-like reporting requirements amount to a prior restraint on political speech.  *See Barland*, 751 F.3d at 823 (citing *Citizens United*, 558 U.S. at 335).

81.     The provisions of Colo. Const. art. XXVII, § 9(2)(a) that permit a private enforcement action are too burdensome to First and Fourteenth Amendment freedoms and are therefore unconstitutional on their face.

82.     At a minimum, the provisions of Colo. Const. art. XXVII, § 9(2)(a) that permit a private enforcement action cannot be applied to RMGO and CCFL because it is unconstitutional to subject RMGO and CCFL to such large burdens that amount to issue speech suppression under the First and Fourteenth Amendments to the United States Constitution.

<div align="center">

**FOURTH CLAIM FOR RELIEF**
**(Colorado's Reporting and Disclosure Requirements Violate Article II, Section 10 of the Colorado Constitution)**

</div>

83.     Plaintiffs re-allege the allegations set forth in paragraphs 1 through 82 as through fully set forth herein.

84.     The Colorado Constitution provides "greater protection of free speech than does the First Amendment."  *Bock v. Westminster Mall Co.*, 819 P.2d 55, 59 (Colo. 1991) (en banc).

85.     Accordingly, for the reasons stated above, Colorado's overbroad definition of "electioneering communication" (C.R.S. 1-45-103(9) and Colo. Const. art. XXVIII, § 2(7)),  and the statutory burdens placed upon protected speech under Article XXVIII, §§ 6 and 9, of the

Colorado State Constitution, in conjunction with the Fair Campaign Practices Act ("FCPA"),

C.R.S. 1-45-101, *et seq.*, violate the Colorado Constitution, Article II, Section 10.

86.     The entire reporting and disclosure framework must be declared invalid on its

face.

87.     At a minimum, Colorado's reporting and disclosure framework must be declared

unconstitutional under the Colorado Constitution as applied to RMGO and CCFL.

**PRAYER FOR RELIEF**

88.     WHEREFORE, Plaintiffs Rocky Mountain Gun Owners and Colorado Campaign

for Life request that this Court grant all appropriate relief for the violations alleged above,

including:

a.     An order and judgment declaring that Colorado's overbroad definition of

"electioneering communication" (C.R.S. 1-45-103(9) and Colo. Const. art. XXVIII,

§ 2(7)),  and the statutory burdens placed upon protected speech under Article XXVIII,

§§ 6 and 9, of the Colorado State Constitution, in conjunction with the Fair Campaign

Practices Act ("FCPA"), C.R.S. 1-45-101, *et seq.*, violate the First and Fourteenth

Amendments to the United States Constitution.

b.     An order and judgment declaring that Colorado's overbroad definition of

"electioneering communication" (C.R.S. 1-45-103(9) and Colo. Const. art. XXVIII,

§ 2(7)),  and the statutory burdens placed upon protected speech under Article XXVIII,

§§ 6 and 9, of the Colorado State Constitution, in conjunction with the Fair Campaign

Practices Act ("FCPA"), C.R.S. 1-45-101, *et seq.*, violate Article II, Section 10 of the

Colorado Constitution.

c.      An order and judgment declaring that Colo. Const. art. XXVIII, § 6's $1,000 expenditure threshold is too low to constitutionally trigger reporting and disclosure requirements under the First and Fourteenth Amendments to the United States Constitution.

d.      An order and judgment declaring that Colo. Const. art. XXVIII, § 6's $1,000 expenditure threshold is too low to constitutionally trigger reporting and disclosure requirements under Article II, Section 10 of the Colorado Constitution.

e.      An order and judgment declaring that the provisions of Colo. Const. art. XXVII, § 9(2)(a) that permit a private enforcement action are too burdensome to First and Fourteenth Amendment freedoms and therefore violate the First and Fourteenth Amendments to the United States Constitution.

f.      An order and judgment declaring that the provisions of Colo. Const. art. XXVII, § 9(2)(a) that permit a private enforcement action are too burdensome to First and Fourteenth Amendment freedoms and therefore violate Article II, Section 10 of the Colorado Constitution.

g.      An order and judgment preliminarily and permanently enjoining the Defendants from enforcing Colorado's reporting and disclosure requirements in their entirety, or in the alternative, from enforcing Colorado's reporting and disclosure requirements as applied to Rocky Mountain Gun Owners and Colorado Campaign for Life.

h.      Attorneys' fees and costs pursuant to any applicable statute or authority, including 42 U.S.C. § 1988; and

i.      Any further relief that this Court in its discretion deems just and proper.

## **VERIFICATION**

Pursuant to 28 U.S.C. §  1745, I, Dudley Brown, executive director of Rocky Mountain

Gun Owners, declare under penalty of perjury that the foregoing VERIFIED COMPLAINT FOR

DECLARATORY AND INJUNCTIVE RELIEF is true and correct.

Executed on this 17th day of October, 2014.


/s/ Dudley Brown
Dudley Brown

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1745, I, Christy Rodriquez, executive director of Colorado

Campaign for Life, declare under penalty of perjury that the foregoing VERIFIED

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF is true and correct.

Executed on this 17th day of October, 2014.


/s/ Christy Rodriquez
Christy Rodriquez

Dated: October 17, 2014

Respectfully submitted,

/s/ David A. Warrington
David A. Warrington
Laurin H. Mills
Andrew J. Narod
Paris R. Sorrell
LeClairRyan, A Professional Corporation
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
Telephone: (703) 684-8007
Facsimile: (703) 647-5999
david.warrington@leclairryan.com
laurin.mills@leclairryan.com
andrew.narod@leclairryan.com
paris.sorrell@leclairryan.com


James O. Bardwell
Rocky Mountain Gun Owners
501 Main Street, Suite 200
Windsor, CO 80550
Telephone: (877) 405-4570
Facsimile: (202) 351-0528
jb@nagrhq.org
*Counsel for Plaintiffs Rocky Mountain Gun
Owners and Colorado Campaign for Life*