**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 1:14-cv-02850

ROCKY MOUNTAIN GUN OWNERS, et al.,

Plaintiffs,

v.

SCOTT GESSLER, et al.,

Defendants.

**ORDER DENYING MOTIONS FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**Blackburn, J.**

This matter is before me on the following: (1) the **Motion for Preliminary Injunction** [#23][1] filed November 7, 2014; and (2) the **Motion for Temporary Restraining Order** [#33] filed December 8, 2014. Both motions were filed by the plaintiffs. The defendants filed responses [#26 & #28] to the **Motion for Preliminary Injunction** [#23], and the plaintiffs filed a reply [#35]. No response or reply has been filed concerning the **Motion for Temporary Restraining Order** [#33]. Both motions address the same undisputed facts and address the same legal issues. I deny the motions.

**I. JURISDICTION**

I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

---

[1] "[#23]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

## II. BACKGROUND

Rocky Mountain Gun Owners (RMGO) and Colorado Campaign for Life (CCFL) are Colorado non-profit corporations. The stated mission of RMGO is to defend the right of Coloradans to keep and bear arms. The stated mission of CCFL is to promote the passage of pro-life legislation and to lobby for support of such public policy positions. In pursuit of these missions, RMGO and CCFL engage in issue driven speech to inform Coloradans about the public policy positions of political candidates on relevant issues.

In June 2014, RMGO and CCFL sent mailers to Republican primary voters in Colorado Senate Districts 19 and 22. The mailings unambiguously referred to candidates for office in Colorado and highlighted the track records of candidates on either gun rights or the protection of unborn life. Each mailing campaign cost more than 1,000 dollars. The mailers were mailed to voters within thirty days of the June 24, 2014, primary election.

Colorado Ethics Watch (CEW)[2] contends the mailers sent by RMGO and CCFL are subject to certain reporting requirements under Colorado elections law. Neither RMGO nor CCFL filed reports concerning the communications described above. On September 9, 2014, CEW filed a complaint with the Colorado Secretary of State, defendant Scott Gessler, concerning the failure of RMGO and CCFL to file the reports required by Colorado law. As a result of the complaint filed by CEW, a hearing before an administrative law judge is scheduled for December 17, 2014. In its present motions, RMGO and CCFL seek an order enjoining the defendants from proceeding

---

[2] According to the complaint [#1], Colorado Ethics Watch is a trade name under which defendant Committee for Responsibility and Ethics in Washington (CREW) is registered to operate in Colorado. *Complaint* [#1], ¶ 20.

with the December 17, 2014, hearing and mandating a stay of the state administrative proceedings until this court can address the constitutional claims of the plaintiffs. *Memorandum of plaintiffs* [#34], p.17.

In their complaint [#1], RMGO and CCFL contend, *inter alia*, that the reporting provisions of Colorado law concerning electioneering communications are facially unconstitutional because the definition of "electioneering communication" is too broad and the spending threshold which triggers the reporting requirement is too low. The requirements of Colorado law and the enforcement scheme, the plaintiffs contend, have an unconstitutional chilling effect on their First Amendment freedoms. In addition, the plaintiffs contend the reporting requirements violate the Colorado Constitution.

A brief summary of the relevant provisions of Colorado law is necessary. Article XXVIII of the Constitution of the State of Colorado and the Colorado Fair Campaign Practices Act (FCPA) are the primary campaign finance laws in Colorado. Colo. Const. art. XXVIII, §§ 1 - 17; §§1-45-101 - 118, C.R.S. These provisions impose various reporting and disclosure requirements on speakers engaged make an electioneering communication. An electioneering communication is

> [A]ny communication broadcasted by television or radio, printed in a newspaper or on a billboard, directly mailed or delivered by hand to personal residences or otherwise distributed that:
>
> (I) Unambiguously refers to any candidate; and
>
> (II) Is broadcasted, printed, mailed, delivered, or distributed within thirty days before a primary election or sixty days before a general election; and
>
> (III) Is broadcasted to, printed in a newspaper, distributed to, mailed to, delivered by hand to, or otherwise distributed to an audience that includes members of the electorate for such public office.

3

Colo. Const. art. XXVIII, § 2(7); §1-45-103(9), C.R.S.  A wide range of communications are excluded explicitly from the definition of electioneering communication, including news articles, opinion writings, and certain broadcasts. Colo. Const. art. XXVIII, § 2(7); §1-45-103(9), C.R.S.   However, if a person or entity spends 1,000 dollars or more on electioneering communications in a calendar year, the person or entity must file an online transaction report that includes, *inter alia*, the name of the candidate(s) to which the communication(s) referred, a report of all spending in excess of 1,000 dollars on electioneering communications, identifying information for the person or entity, and certain information about persons contributing money to fund the electioneering communications.   Colo. Const. art. XXVIII, § 6(1); §1-45-108(1)(a)(3), C.R.S.

The Colorado Secretary of State is responsible for promulgating rules for the administration and enforcement of these provisions.   Colo. Const. Art. XXVIII, §§ 8 - 9. In addition, any person may file with the Secretary of State a complaint seeking enforcement of these provisions.  Colo. Const. Art. XXVIII, § 9(2)(a).  When such a complaint is filed, the Secretary of State is required to refer the complaint to an administrative law judge.  *Id.*  The administrative law judge must hold a hearing within fifteen days of the reference of the complaint and must render a decision within fifteen days of the hearing.  *Id.*  Such decisions are subject to review by the Colorado Court of Appeals.  *Id.*

The secretary of state may bring an enforcement action to enforce the decision of the administrative law judge.  *Id.*  If the secretary of state does not bring an enforcement action, a private party may bring an enforcement action.  *Id.*  Violators are subject to a fine of 50 dollars for each day that the required reports are not filed after they are due. Colo. Const. Art. XXVIII, § 10(2)(a).  On appeal, an administrative law judge may reduce

or set aside the penalty based on a showing of good cause. Colo. Const. art. XXVIII, § 10(2)(b).

In the briefing on the motions, the parties address the standards applicable to a motion for temporary restraining order and motion for preliminary injunction. In addition, the Colorado Secretary of State contends that this court should abstain from exercising jurisdiction over this case under the abstention doctrine established in *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny. I agree with this contention.

### III.   *YOUNGER* ABSTENTION

"(F)ederal courts have a virtually unflagging obligation to exercise their jurisdiction except in those extraordinary circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *Deakins v. Monaghan*, 484 U.S. 193, 203 (1988) (internal quotations omitted). "(E)ven in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the exception not the rule." *Sprint Communications v. Jacobs*, ___ U.S. ___, 134 S.Ct. 584 (2013).

In *Sprint Communications*, the Supreme Court of the United States summarized the three types of proceedings in which a federal court should refuse to decide a case in deference to a parallel state proceeding. First, federal courts abstain from intruding into ongoing state criminal prosecutions. *Id*. at ___, 134 S.Ct. at 591. Second, certain state civil enforcement proceedings warrant federal court abstention. *Id*. Third, abstention is warranted when federal court action would interfere with pending state civil proceedings involving orders uniquely in furtherance of the ability of state courts to perform their judicial functions. *Id*.

The *Sprint* Court addressed the second category, civil enforcement proceedings.

That category is the only category with potential application in this case. Such enforcement actions are "characteristically initiated to sanction the federal plaintiff, *i.e.*, the party challenging the state action, for some wrongful act." *Id*. at ___, 134 S.Ct. at 592. Citing examples of such state civil enforcement proceedings which the Court has found to be subject to *Younger* abstention, the court noted cases involving attorney discipline proceedings for violation of state ethics rules, state-initiated administrative proceedings to enforce civil rights laws, a state-initiated proceeding to gain custody of children allegedly abused by their parents, a civil proceeding to recover welfare payments allegedly obtained by fraud, and a state initiated proceeding to enforce obscenity laws. *Id*. at 592 (citing cases). Such administrative proceedings, the Court noted, generally are invoked to impose a state sanction for a wrongful act, often are initiated by a state authority, and, at least in those respects, are "akin to a criminal prosecution." *Id*. at 592 - 593 (internal quotation and citation omitted).[3]

The decision of the Court in ***Ohio Civil Rights Commission v Dayton Christian Schools***, an example of proper *Younger* abstention cited in *Sprint*, is informative. 477 U.S. 619 (1986). In ***Dayton Christian Schools***, Linda Hoskinson, a teacher employed by Dayton Christian Schools, told her principal that she was pregnant. The principal told Ms. Hoskinson that her contract would not be renewed at the end of the school year because the school adhered to the religious doctrine that mothers should stay home with their preschool age children. Ms. Hoskinson contacted an attorney who threatened

---

[3] In *Sprint*, the Court held *Younger* abstention was not applicable to the administrative proceeding at issue there because the state proceeding in question was invoked primarily to settle a civil dispute between private parties and not to sanction Sprint for commission of a wrongful act. *Sprint*, ___ U.S. at ___, 134 S.Ct. at 592 - 593. Further, the court noted that the administrative proceeding was not initiated by the state in its sovereign capacity and did not involve a state investigation of the activities of Sprint. *Id*. ___ U.S. at ___, 134 S.Ct. at 592.

litigation against the school based on state and federal sex discrimination laws. The superintendent of Dayton Christian told Ms. Hoskinson that she was suspended immediately because, by threatening litigation, she challenged the nonrenewal decision in a manner inconsistent with the internal dispute resolution doctrine of the school, which also had a basis in religious doctrine. Ultimately, the employment of Ms. Hoskinson was terminated because of her violation of the dispute resolution doctrine. *Id*. at 623.

Ms. Hoskinson filed a complaint with the Ohio Civil Rights Commission, alleging that the initial nonrenewal decision constituted sex discrimination under Ohio and federal law and the termination decision penalized her for asserting her rights concerning sex discrimination in employment. The commission notified Dayton Christian that the commission was conducting an investigation. Ultimately, the commission determined that there was probable cause to believe Dayton Christian had discriminated against Ms. Hoskinson based on her sex and had retaliated against her for attempting to assert her rights. The commission initiated administrative proceedings against Dayton Christian by filing a complaint.

Dayton Christian answered the administrative complaint and asserted that the First Amendment prevented the commission from exercising jurisdiction over Dayton Christian because the actions of the school had been taken based on its sincerely held religious beliefs. While the administrative proceedings were pending, Dayton Christian filed suit in federal court and sought a permanent injunction against the state administrative proceedings. Dayton Christian claimed that any administrative investigation of its hiring process and any administrative imposition of sanctions for the nonrenewal or termination decisions would violate the religious clauses of the First

7

Amendment. *Id*. at 624 - 625.

The Supreme Court held that "the District Court should have abstained from adjudicating this case under *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and later cases." *Dayton Christian Schools*, 477 U.S. at 625. The Court noted the application of *Younger* to state administrative proceedings in which important state interests are vindicated, "so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim." *Id*. at 627. The Court found that the state interest in eliminating prohibited sex discrimination is sufficiently important to bring the case within the ambit of *Younger*. *Id*. at 628. In addition, the court found that the state proceedings provided an adequate opportunity for Dayton Christian to raise its constitutional claims. *Id*. On this point, the Court concluded that even if Dayton Christian could not raise its constitutional claims in the administrative proceedings, "it is sufficient . . . that constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Id*. at 629.

Whether state administrative proceedings are judicial in nature is another factor noted by the *Dayton Christian Schools* Court. *Id*. at 627. If state law indicates that state administrative proceedings are not judicial in nature, then "abstention may not be appropriate." *Id*. at 627, n. 2. However, when an administrative proceeding leads to a judicial proceeding on the same issue, the proceedings as a whole generally are seen to be judicial in nature. *See, e.g., Sprint*, ___ U.S. at ___, 134 S.Ct. at 592 (assuming without deciding that an administrative adjudication followed by state court review is a unitary process for purposes of *Younger*.)

Dayton Christian argued that the mere exercise of jurisdiction over it by the state administrative body violated its First Amendment rights. In response, the Court noted

8

that "we have repeatedly rejected the argument that a constitutional attack on state procedures themselves automatically vitiates the adequacy of those procedures for purposes of the *Younger - Huffman* line of cases." *Id*. at 628 (internal quotation and citation omitted).

Applying the principles stated in *Sprint* and *Dayton Christian Schools*, I find and conclude that *Younger* abstention is proper in the present case. The administrative enforcement action at issue here was initiated to determine if RMGO and CCFL violated state law and to sanction RMGO and CCFL for any such violations. If sanctions are imposed, they are imposed and enforced by state authorities. Colo. Const. art. XXVIII, §§ 9-10. The enforcement action serves the state interest in enforcing its election laws and regulations. That interest generally is of the same level of importance as the enforcement of sex discrimination law or the enforcement of professional rules regulating the practice of law. *Dayton Christian Schools*, 477 U.S. at 628; *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434-35 (1982).

Although the enforcement action against RMGO and CCFL was initiated when a private organization filed a complaint, that complaint triggered action by a state official, the Colorado Secretary of State, to engage the enforcement mechanisms provided in the Colorado Constitution and statutes. The administrative proceedings at issue in *Dayton Christian Schools* also were initiated by a complaint filed by a private party and that complaint triggered state action. The first step in the Colorado proceedings at issue here is a hearing before an administrative law judge who must determine if a violation has occurred and, if so, must impose financial penalties mandated by the Colorado Constitution. From the outset, these proceedings are judicial in nature. In all

9

relevant respects, the administrative proceedings in which RMGO and CCFL are involved are of the same nature as the proceedings at issue in *Dayton Christian Schools* and the other administrative proceedings subject to *Younger* abstention noted by the Supreme Court in *Sprint*.  *Sprint Communications*, ___ U.S. ___, 134 S.Ct. at 591.

RMGO and CCFL note that they may not raise their facial federal constitutional challenge to the Colorado constitutional and statutory provisions in proceedings before the Colorado administrative law judge. The defendants concede that this is true. However, it is undisputed that, assuming RMGO and CCFL are sanctioned by the administrative law judge, they may raise any constitutional claim they wish to assert in an appeal of the decision of the administrative law judge to the Colorado Court of Appeals.  For purposes of *Younger* abstention, this is an adequate opportunity for RMGO and CCFL to raise their federal constitutional claims in the state proceedings. *Dayton Christian Schools*, 477 U.S. at 629.

In addition, RMGO and CCFL contend that the state administrative proceedings and possible fines are "an unnecessary and unconstitutional tax on free speech and freedom of association . . . ." *Motion for temporary restraining order* [#34], p. 4.  This contention does not undermine the application of *Younger* abstention.  As the Court noted in *Dayton Christian Schools*, a constitutional attack on state procedures themselves does not automatically vitiate the adequacy of state procedures for the purposes of *Younger* abstention.  477 U.S. at 629.

## IV.  CONCLUSION & ORDERS

The administrative proceedings pending against RMGO and CCFL are the type of proceedings entitled to abstention under *Younger v. Harris*, 401 U.S. 37 (1971) and

its progeny. As a result, it is not proper for this court to address the constitutional issues raised by RMGO and CCFL, including their motions for temporary restraining order and preliminary injunction. Rather, these issues must be raised and addressed in proceedings before the Colorado administrative law judge, the Colorado Court of Appeals, and/or the Colorado Supreme Court.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Motion for Preliminary Injunction** [#23] filed November 7, 2014, is **DENIED** without prejudice; and

2. That the **Motion for Temporary Restraining Order** [#33] filed December 8, 2014, is **DENIED** without prejudice.

Dated December 16, 2014, at Denver, Colorado.

                        **BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge