IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02850-REB-KLM

ROCKY MOUNTAIN GUN OWNERS, a Colorado non-profit corporation, and
COLORADO CAMPAIGN FOR LIFE, a Colorado non-profit corporation,

　　Plaintiffs,

v.

WAYNE W. WILLIAMS, in his official capacity as Secretary for the State of Colorado,

　　Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

　　This matter is before the Court on Defendant's **Motion to Dismiss** [#82][1] (the "Motion"). Plaintiffs filed a Response [#89] in opposition to the Motion [#82], and Defendant filed a Reply [#92]. Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1(c), the Motion [#82] has been referred to the undersigned for recommendation. *See* [#84]. The Court has reviewed the Motion, Response, Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that Motion [#82] be **GRANTED**.

### I. Summary of the Case

　　This lawsuit was filed on October 17, 2014. *Compl.* [#1]. Plaintiffs are non-profit corporations engaged in grassroots lobbying. *Am. Compl.* [#78] ¶¶ 10-15. In June 2014,

---

　　[1] "[#82]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

Plaintiffs independently sent mailings to Republican primary voters in Colorado Senate Districts 19 and 22. *Id.* ¶¶ 27, 29. Each organization's mailings referred to candidates for office in Colorado, and each spent more than $1,000 on the mailings. *Id.* ¶¶ 28, 30. The mailings were mailed or delivered to voters within Colorado Senate Districts 19 and 22 within thirty days of the June 24, 2014 primary election. *Id.* ¶ 31. Neither organization "filed a report to the Secretary of State of the State of Colorado pursuant to Colo. Const. art. XXVIII, § 6(1) or Colo. Rev. Stat. Ann. § 1-45-108 (1)(a)(III) that included spending on such communications, and the name, and address, of any person that contributed more than two hundred and fifty dollars per year, and the occupation and employer of each such natural person." *Id.* ¶ 32.

A private organization named Colorado Ethics Watch ("CEW") filed a private enforcement action against Plaintiffs based on their failure to make the required filings with the State. *Id.* ¶ 33. On December 23, 2014 (after the present federal lawsuit had been filed), the Colorado Office of Administrative Courts issued a decision that found Plaintiffs guilty of failing to file electioneering communications reports. *Id.* ¶ 36. That decision required both Plaintiffs to file such reports within thirty days and to pay a "substantial" civil penalty. *Id.*

In connection with this lawsuit, Plaintiffs assert that they "intend to continue to distribute similar issue-based communications in the future, including the next election cycle, to inform their constituencies of the positions of potential candidates on issues surrounding the Second Amendment . . . and/or abortion . . . ." *Id.* ¶ 37. "Neither the previous mailings, . . . nor future communications, have expressly or impliedly advocated for the election or defeat of any candidate for office." *Id.* Plaintiffs "affirm that future

mailings for the next election cycle will have similar content to

the 2014 mailings, will exceed $1,0000 [sic] in cost, and will be directed towards the

electorate." *Id.*

Plaintiffs "bring this lawsuit [against Defendant Wayne W. Williams in his official capacity as Secretary of State for the State of Colorado] to declare Colorado's electioneering law unconstitutional on its face and as applied to them." *Id.* ¶ 38. In Claim One, Plaintiffs assert that Colorado's definition of "electioneering communication" violates the First and Fourteenth Amendments. *Id.* ¶¶ 39-49. In Claim Two, Plaintiffs assert that the spending threshold which triggers reporting is too low and violates the First and Fourteenth Amendments. *Id.* ¶¶ 50-55. In Claim Three, Plaintiffs assert that the statutory scheme for private enforcement of alleged violations of campaign finance laws is overly broad and has a chilling effect on First Amendment freedoms. *Id.* ¶¶ 56-64.[2]

Plaintiffs' original Complaint also named CEW as a defendant. [#1] ¶ 20. On August 12, 2015, the District Judge dismissed the case on the basis of *Younger* abstention. *Order* [#61]. Plaintiffs appealed to the Tenth Circuit Court of Appeals, and on November 7, 2016, the Tenth Circuit reversed and remanded on the basis that *Younger* is inapplicable to the facts of this case. *Rocky Mountain Gun Owners v. Williams*, 671 F. App'x 1021 (10th Cir. 2016). In that opinion, the Tenth Circuit declined to address Defendants' mootness

---

[2] Despite Plaintiffs' invocation of the Fourteenth Amendment, only First Amendment claims are presented here. *See generally Response* [#89] at 1-8; *see also id.* at 3 ("This case is about whether [Plaintiffs] still have First Amendment rights."). Rather, the Fourteenth Amendment is only mentioned as the vehicle through which the First Amendment is made applicable to actions of the States. *See, e.g.*, *Am. Compl.* [#78] ¶ 45 (stating that "Colorado's definition of 'electioneering communication,' and the statutory burdens placed upon protected speech . . . violate the First Amendment to the United States Constitution (as incorporated to apply to the States under the Fourteenth Amendment)"). Accordingly, the Court does not perform an independent Fourteenth Amendment analysis of any claim.

argument that there is "no possible relief that this court can grant because the state court enforcement proceedings are complete," on the basis that the district court had not reached the issue. *Id.* at 1025.

On remand, Plaintiffs filed the Amended Complaint [#78] on March 1, 2017, omitting CEW from the present lawsuit. Defendant Wayne W. Williams, as the sole remaining defendant, argues for dismissal of this entire lawsuit on the basis of mootness pursuant to Fed. R. Civ. P. 12(b)(1) and on the basis of failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Motion* [#82].

## II. Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) attacks a court's subject matter jurisdiction. The determination of a court's jurisdiction over the subject is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987). The objection that a federal court lacks subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may be raised by a party, or by a court on its own initiative, at any stage in the litigation. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). If at any time, the Court determines that it lacks subject matter jurisdiction, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3); *Arbaugh*, 546 U.S. at 506. A 12(b)(1) motion may take two forms: a facial attack or factual attack on the complaint. When reviewing a facial attack on the complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1), and when the challenge is supported by affidavits and other documents, the Court makes its own factual findings. *Id.* at 1003.

## III. Analysis

At the outset, the Court must address the subject matter jurisdiction issue raised by Defendant, i.e., mootness.[3] Defendant argues that Plaintiffs' lawsuit is moot under both constitutional and prudential mootness doctrines. *Motion* [#82] at 19. Because the Court finds that constitutional mootness applies here, it does not address Defendant's alternative argument regarding prudential mootness.

Defendant argues in part that this lawsuit is moot because the underlying enforcement proceedings were concluded in December 2014, and Plaintiffs did not file an appeal regarding those proceedings. *Motion* [#82] at 20. "Article III of the Constitution limits federal courts to deciding 'Cases' and 'Controversies,' and an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Kansas by and through Kansas Dep't for Children & Families v. SourceAmerica*, 874 F.3d 1226, 1236 (10th Cir. 2017) (quoting *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1975 (2016) (internal quotation marks omitted)). "In considering mootness, we ask whether granting a present determination of the issues offered will have some effect

---

[3] The Court notes, without deciding, that a second subject matter jurisdiction issue, i.e., standing, *may* also be a problem here. *See City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d1089, 1093 (10th Cir. 2017) ("Moreover, the district courts have an independent obligation to address their own subject-matter jurisdiction and can dismiss actions sua sponte for a lack of subject-matter jurisdiction."). The Tenth Circuit has held that "plaintiffs in a suit for prospective relief based on a 'chilling effect' on speech can satisfy the [standing] requirement that their claim of injury be 'concrete and particularized' by (1) evidence that in the past they have engaged in the type of speech affected by the challenged government action; (2) affidavits or testimony stating a present desire, though no specific plans, to engage in such speech; and (3) a plausible claim that they presently have no intention to do so because of a credible threat that the statute will be enforced." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1088 (10th Cir. 2006). The Court is not convinced that Plaintiffs have standing to assert all claims based on application of the appropriate legal test. Nevertheless, given the Court's recommendation regarding mootness, the standing issue need not be determined at this time.

in the real world." *SourceAmerica*, 874 F.3d at 1236 (quoting *Fleming v. Gutierrez*, 785 F.3d 442, 444-45 (10th Cir. 2015) (internal quotation marks omitted)). "The burden of establishing there is no longer a live case or controversy is on the party claiming mootness . . . ." *In re Rich Global, LLC*, 652 F. App'x 625, 628 (10th Cir. 2016) (citing *Search Market Direct, Inc. v. Jubber (In re Paige)*, 584 F.3d 1327, 1336 (10th Cir. 2009)).

In their Response, Plaintiffs largely conflate their argument about why this case is not moot, an issue on which Defendant has the burden, with their argument about why an exception to mootness applies, an issue on which Plaintiffs have the burden. *Response* [#89] at 18-22; *Search Market Direct, Inc.*, 584 F.3d at 1336; *SourceAmerica*, 874 F.3d at 1237.

The Court first rejects Plaintiffs' argument that this case is not moot because the Tenth Circuit Court of Appeals could have chosen to dismiss it on the basis of mootness, rather than reversing and remanding on the basis that *Younger* abstention does not apply. *Response* [#89] at 18. The Tenth Circuit forthrightly stated: "Because the district court improperly abstained, it never reached the mootness issue. Thus, we leave this question to the district court on remand." *Rocky Mountain Gun Owners*, 671 F. App'x at 1025. There is nothing in this statement which indicates that the Court of Appeals "did not accept" the mootness argument, *see Response* [#89] at 18, and there is nothing in this statement (or elsewhere in the opinion) to indicate *any* opinion on this legal argument. Thus, Plaintiffs' argument on this point is without merit.

The remainder of Plaintiffs' argument regarding mootness has nothing to do with why the case is not moot now. They do not point to any current live controversy, but, rather, only to future events, i.e., that they plan to distribute mailings again in the future,

-6-

and that they "fear future persecution" from the government and from private enforcement groups. *Response* [#89] at 20. Given Defendant's compelling argument that "a determination by this Court on the issues presented will have no 'effect in the real world'" because all enforcement proceedings against Plaintiffs have been terminated, and given Plaintiffs' failure to respond with any demonstration that resolution of this case would have a present effect on them, the Court finds that the mootness doctrine applies here.

That is not the end of the discussion, however. Plaintiffs argue that this case falls under an exception to the mootness doctrine because the events underlying this lawsuit are capable of repetition yet evading review. *Response* [#89] at 21. "Under this exception to mootness, a dispute remains live if '(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'" *SourceAmerica*, 874 F.3d 1226, 1237 (quoting *Turner v. Rogers*, 564 U.S. 431, 439-40 (2011) (internal quotation marks omitted)). The party "asserting that the exception applies [ ] bear[s] the burden of showing that this dispute is capable of repetition yet evading review." *SourceAmerica*, 874 F.3d at 1237 (citing *Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1229 (10th Cir. 2012)).

Plaintiffs, despite having the burden to demonstrate that this exception applies here, *see SourceAmerica*, 874 F.3d at 1237, do not directly address the first element, i.e., whether "the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." *Id.*; *see generally Response* [#89] at 18-22. Although not obligated to do so on Plaintiffs' behalf, the Court has carefully reviewed the Amended Complaint [#78] and record in this matter and has not found any clear statement regarding

this element.

More specifically, the duration of the challenged action has not been briefed here. For example, is that time frame the few weeks pre-election when Plaintiffs will distribute their mailings? Or is it the length of time encompassed by the enforcement proceedings, however long that may be? Or is the relevant time frame a two-year election cycle? Is it a four-year election cycle? Or is it simply the 30-day window provided by law during which Plaintiffs distributed their mailings? Here, the underlying enforcement proceedings concluded on December 23, 2014, roughly six months after the distribution of Plaintiffs' materials, *see Am. Compl.* [#78] ¶ 36, followed by a deadline of about two months in which Plaintiffs could file an appeal (though no appeal was taken). *See Rocky Mountain Gun Owners*, 671 F. App'x at 1023-24. Thus, the time frame of the enforcement proceedings *in this case* was less than a year from the time of the violations occurring in June 2014 through the date when an appeal could have been taken in February 2015, although there is no indication given by the parties whether that time period is typical of these types of proceedings.

However, regardless of Plaintiffs' lackadaisical attempt to meet their burden on this element, based on pertinent Tenth Circuit authority, it appears that the requirement that "the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration," is met. *SourceAmerica*, 874 F.3d at 1237. In *Independence Institute v. Williams*, 812 F.3d 787, 791 n.3 (10th Cir. 2016), a case heavily relied on by both parties for other issues in this lawsuit due to its many similarities, the Tenth Circuit noted:

> Although the 2014 gubernatorial election has passed, this appeal is not moot. There is no dispute that the Institute intends to run similar ads in the future. Moreover, it is clear in this case that there was not enough time to fully

litigate the issue during the sixty-day window provided by law and that a significant chance exists for the alleged violation to recur.

Here, similarly, the 2014 primary elections have passed, but there is no dispute that Plaintiffs indicate an intention to send similar mass mailings in the future. *Am. Compl.* [#78] ¶¶ 27-31, 37. Further, electioneering communications include only those that are distributed within thirty days before a primary election or sixty days before a general election. Colo. Const. art. XXVIII, § 2(7); Colo. Rev. Stat. 1–45–103(9). In this case, Plaintiffs sent mailings within thirty days of a primary election, which is even less time than the sixty-day window mentioned in *Independence Institute*.

In *Davis v. Federal Election Commission*, 554 U.S. 724, 735 (2008), the United States Supreme Court held in a similar context:

> In [*Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449 (2007)], "despite [the Bipartisan Campaign Reform Act of 2002's ("BCRA")] command that the cas[e] be expedited 'to the greatest possible extent,' " [the defendant's] claims could not reasonably be resolved before the election concluded. 551 U.S. at 462 (quoting § 403(a)(4), 116 Stat. 114, note following 2 U.S.C. § 437h). Similarly, in this case despite BCRA's mandate to expedite and [the plaintiff's] request that his case be resolved before the 2004 general election season commenced, [the plaintiff's] case could not be resolved before the 2006 election concluded, demonstrating that his claims are capable of evading review.

In other contexts, the United States Supreme Court has "held that a period of two years is too short to complete judicial review." *Kingdomware Techs., Inc.*, 136 S. Ct. at 1976. Thus, despite the absence of *any* attempt by Plaintiffs to meet their burden and demonstrate the timing element, *see SourceAmerica*, 874 F.3d at 1237, the Court finds that this first element is met.

The majority of the argument presented by the parties relates to the second element of this exception to mootness, i.e., whether "there is a reasonable expectation that the

same complaining party will be subjected to the same action again." *SourceAmerica*, 874 F.3d at 1237. In the Amended Complaint, Plaintiffs state that they "intend to continue to distribute similar issue-based communications in the future, including the next election cycle . . . ." [#78] ¶ 37. They also "affirm that future mailings for the next election cycle will have similar content to the 2014 mailings, will exceed $1,0000 [sic] in cost, and will be directed towards the electorate." *Id.*

Plaintiffs argue in their Response: "[Defendant] is not arguing that the statute has been amended. [Defendant] is not pointing to any guidance showing that the statute will be implemented differently in the future." *Response* [#89] at 21. Defendant replies:

> [S]tatements of future intent are understandably insufficient. Unforeseen changes may undermine that intent. Plaintiffs may experience a change in their leadership, reflecting a change in their overall mission that renders the direct mailers unnecessary. Relatedly, a shift in Plaintiffs' financial condition or the political climate may alter their priorities, causing them to forgo the direct mailers. Even if Plaintiffs do proceed with their future mailers, CEW may decline to file a complaint, finding it financially or politically advantageous to reserve their resources for other matters. Or, CEW's complaint may pursue different violations than before. Or, it may pursue the same violations but in an objective and neutral manner, not in "bad faith" or with "animus." Whatever the case may be, it remains only a theoretically [sic] possibility, not a demonstrated probability, that Plaintiffs will again be subject to precisely the same controversy.

*Reply* [#92] at 15.

Plaintiffs' attempt to meet their burden to demonstrate that they will be subjected to the same action again is half-hearted, at best. *See SourceAmerica*, 874 F.3d at 1237. They are correct that there is no indication that the statutes at issue have been amended or are in the process of being amended. There is also no indication that implementation of the statutes will vary in the future. Further, much of Defendant's argument above is mere speculation as to changes that may occur between 2014 and any potential future

enforcement action.

However, the law requires Plaintiffs to demonstrate that "there is a *reasonable* expectation that the same complaining party will be subjected to the *same* action again." *SourceAmerica*, 874 F.3d at 1237 (emphases added). Several items counsel against this finding. First, there is no indication in the record that CEW, as the private organization that instigated enforcement proceedings against Plaintiffs, will again attempt to enforce these statutes. *See, e.g.*, *Reply* [#92] at 16 (citing *Sonoma Cty. Office of Educ. v. Cal. Special Educ. Hearing Office*, No. 03-17291, 2005 WL 2471042, *2 (9th Cir. Oct. 7, 2005) (stating that "contingencies outside the [defendant's] control" counsel against a finding that the plaintiff will again be subject to the same injury so as to survive the mootness inquiry)); *see also Kingdomware Techs., Inc.*, 136 S. Ct. at 1976 (stating that "we have jurisdiction because the same legal issue in this case is likely to recur in future controversies between the same parties . . . ."). Rather, as pointed out by the District Judge, evidence previously provided in this case by Plaintiffs appears to lead to the opposite conclusion, given that, at least between 2007 and 2014, "each of the plaintiffs has been subject to a complaint initiated by CEW on only one occasion," i.e., which, here, was the 2014 occasion underlying the present litigation. *Order* [#61] (citing [#46-7]). There is also no indication that any other third party is "waiting in the wings" to instigate enforcement proceedings against Plaintiffs, should Plaintiffs affirmatively decide to disregard Colorado's statutory requirements again. This is not a case like *American Wild Horse Preservation Campaign v. Jewell*, 847 F.3d 1174, 1185-86 (10th Cir. 2016), for example, where future government action was already scheduled to take place, despite the government action at issue having already been completed.

Plaintiffs' bare-boned statements of intent regarding their own future actions also seem to fall short of the standard required. In *Davis*, 554 U.S. at 736, the United States Supreme Court discussed this element in a similar context:

> As to the second prong of the exception, even though [the plaintiff in *Wisconsin Right to Life, Inc.*, 551 U.S. at 463] raised an as-applied challenge, we found its suit capable of repetition where "[the plaintiff] credibly claimed that it planned on running 'materially similar' future" ads subject to BCRA's prohibition and had, in fact, sought an injunction that would permit such an ad during the 2006 election. Here, the FEC conceded in its brief that Davis' § 319(a) claim would be capable of repetition if Davis planned to self-finance another bid for a House seat. Davis subsequently made a public statement expressing his intent to do so. As a result, we are satisfied that Davis' facial challenge is not moot.

(internal citations omitted).

Plaintiffs' statements of intention alone lack the same level of "credibility" deemed acceptable by the Supreme Court. Plaintiffs merely state that they "intend to continue to distribute similar issue-based communications in the future, including the next election cycle . . . ." [#78] ¶ 37. They also "affirm that future mailings for the next election cycle will have similar content to the 2014 mailings, will exceed $1,0000 [sic] in cost, and will be directed towards the electorate." *Id.* However, there is no further support for these statements. For example, Plaintiffs neither argue nor aver that they took any action in connection with the 2016 elections, or that they have taken any concrete actions yet with respect to the 2018 elections. There is no indication that they sought an injunction in connection with the 2016 election or will do so regarding the 2018 election, as the plaintiff did in *Wisconsin Right to Life, Inc.*, 551 U.S. at 463. There is no indication that any other action has been taken to show intent, as in *Davis*, 554 U.S. at 736, where the plaintiff made a public statement regarding his intent to again run for election. As such, Plaintiffs have

-12-

not met their burden on this element.  See *SourceAmerica*, 874 F.3d at 1237.

In short, the Court would have to make a number of assumptions to find that this element has been met here.  The Tenth Circuit has clearly articulated that federal courts cannot simply "assume they have subject matter jurisdiction for the purpose of deciding claims on the merits."  *Valenzuela v. Silversmith*, 699 F.3d 1199, 1204-05 (10th Cir. 2012). The Court is loathe to simply determine that subject matter jurisdiction exists without a sufficient showing by Plaintiffs on this point.

To be clear, the Court merely finds that Plaintiffs have failed to meet their burden of demonstrating that the mootness exception applies.  See *SourceAmerica*, 874 F.3d at 1237.  "[S]tatutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction."  *F & S Constr. Co., Inc. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964) (citing *Healy v. Ratta*, 292 U.S. 263 (1934)).  Plaintiffs have made a plausible showing that the exception *may* apply but have simply not plausibly demonstrated that the exception *does* apply.  Accordingly, although the Court **recommends** that the Motion [#82] be **granted** for lack of subject matter jurisdiction on the basis of mootness, the Court further **recommends** that Plaintiffs be provided with a final opportunity to amend their Complaint to demonstrate that the Court has subject matter jurisdiction over their claims.

## IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#82] be **GRANTED**.

IT IS FURTHER **RECOMMENDED** that Plaintiffs be permitted to file a Second

Amended Complaint to address mootness concerns.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated February 27, 2018

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge